UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

JAMEELAH ATTERBERRY,

                        Plaintiff,

            -against-

THE HUNTINGTON BANK, et al.,

                        Defendants.

**MEMORANDUM OPINION
AND ORDER**

19-CV-09805 (PMH)

PHILIP M. HALPERN, United States District Judge:

Plaintiff Jameelah Atterberry ("Plaintiff"), proceeding *pro se*, initiated this action against

Defendants The Huntington National Bank ("Huntington") and Huntington Bancshares

Incorporated ("Bancshares," and collectively, "Defendants") in the New York State Supreme

Court, Sullivan County, on September 23, 2019. (Doc. 4, "Not. of Rem."). Defendants removed

the action to this Court on October 24, 2019. (*Id*.).[1] Plaintiff alleges that Defendants violated: (1)

the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681 *et seq.*; and (2) the Fair Debt Collection

Practices Act ("FDCPA"), 15 U.S.C. § 1692 *et seq.* (*See* Doc. 4-1, "Compl.").[2]

This matter was reassigned from Judge Román to this Court on April 6, 2020 and, on April

7, 2020, this Court issued an Order directing the parties to file "a joint letter . . . via ECF concerning

the status of this action by April 21, 2020." (Doc. 5). The Court instructed Defendants to mail a

copy of the April 7, 2020 Order to Plaintiff; Defendants complied with the Court's direction and

filed the associated affidavit of service on April 10, 2020. (*Id*.; Doc. 6).

---

[1] Defendants' initial attempt to remove the action from New York State Supreme Court on October 23, 2019 was rejected by the Clerk of the Court as deficient. (Oct. 24, 2019 Entry).

[2] "[C]opies of all process, pleadings, and orders served" on Defendants in the New York State action were attached as Exhibit A to the Notice of Removal. (Not. of Rem. ¶ 7). For ease of reference, the entire exhibit is cited as "Compl." and citations correspond to the pagination generated by ECF.

Defendants filed a letter on April 15, 2020 explaining that they had sought leave from Judge Román to file a motion to dismiss and that Plaintiff had not responded to Defendants' pre-motion conference letter because "she was not aware that she was expected to respond." (Doc. 8). On April 16, 2020, the Court issued an Order granting Defendants leave to file a motion to dismiss and outlining the following briefing schedule: (1) moving papers were to be served and filed on or before June 5, 2020; (2) opposition papers were to be served and filed on or before July 15, 2020; and (3) reply papers were to be served and filed on or before July 22, 2020. (Doc. 9). The Court once again instructed Defendants to mail a copy of the April 16, 2020 Order to Plaintiff; Defendants complied with that directive and filed the associated affidavit of service on April 17, 2020. (*Id*.; Doc. 10).

Defendants filed and served their motion on May 18, 2020. (Docs. 11-13). Plaintiff did not file any opposition papers. On January 29, 2021, this Court issued an Order to Show Cause directing Plaintiff to "**show cause in writing on or before February 12, 2021** why this action should not be dismissed with prejudice for want of prosecution under Federal Rule of Civil Procedure 41(b)." (Doc. 14 at 3 (emphasis in original)). The Court warned Plaintiff explicitly that "[f]ailure to comply with this Order shall result in dismissal of this action for want of prosecution." (*Id*.). The Court directed both the Clerk of the Court and Defendants to mail a copy of the Order to Show Cause to Plaintiff (*id*.); both the Clerk of the Court and Defendants complied with the Court's direction on January 29, 2021 (*see* Jan. 29, 2021 Entry; Doc. 15).

As the time for Plaintiff to oppose the pending motion to dismiss and respond to the January 29, 2021 Order to Show Cause has expired, Defendants' motion is deemed unopposed.

## BACKGROUND

Plaintiff alleges that she owed, and satisfied, a debt to FirstMerit Bank ("FirstMerit"). (Compl. at 11; *see also id*. at 15 (letter from Huntington regarding a debt owed to FirstMerit)). Plaintiff claims that FirstMerit merged with Huntington which is, in turn, a subsidiary of Bancshares. (*Id*. at 10). Despite the fact that Plaintiff paid her debt in full on March 29, 2016, she insists that an unspecified "Defendant" continued to seek payment of the debt after that date. (*Id*. at 11).[3] Eventually, on May 17, 2016, a "Defendant charged off" the amount "and sent Plaintiffs' [sic] account to collections." (*Id*.; *see also id*. at 23 (letter from FirstMerit advising that the "account may be assigned to an outside agency for collection")). Plaintiff maintains that "Defendant continued to contact Plaintiff by phone to collect a debt until October 2017." (*Id*. at 12; *see also id*. (alleging that FirstMerit and Huntington tried to collect the debt "through collection letters" until March 10, 2017)).

When Plaintiff opened a checking account in 2017, she discovered that her name was on "the Chex System." (*Id*.). Plaintiff complained to the Consumer Financial Protection Bureau and, eventually, her name was removed from the "Chex System" on or about February 2, 2018. (*Id*.). Plaintiff asserts that, by these acts, "Defendant" violated the FCRA and FDCPA. (*Id*. at 12-13).

## STANDARD OF REVIEW

A Rule 12(b)(6) motion enables a court to dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is

---

[3] As pled, references to "Defendant" are not static and, at any given juncture, refer to the specific entity seeking payment from Plaintiff at that time. The allegations and documents annexed to the Complaint suggest only that FirstMerit and Huntington ever pursued Plaintiff for payment of the debt; Bancshares, on the other hand, appears to be named as a Defendant merely because it is Huntington's corporate parent. (*See* Compl. at 10-24).

plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. (citing *Twombly*, 550 U.S. at 556). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id*. (citing *Twombly*, 550 U.S. at 556). The factual allegations pled "must be enough to raise a right to relief above the speculative level . . . ." *Twombly*, 550 U.S. at 555.

"When there are well-ple[d] factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Iqbal*, 556 U.S. at 679. Thus, the Court must "take all well-ple[d] factual allegations as true, and all reasonable inferences are drawn and viewed in a light most favorable to the plaintiff[]." *Leeds v. Meltz*, 85 F.3d 51, 53 (2d Cir. 1996). The presumption of truth, however, "'is inapplicable to legal conclusions,' and '[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.'" *Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009) (quoting *Iqbal*, 556 U.S. at 678 (alteration in original)). Therefore, a plaintiff must provide "more than labels and conclusions" to show entitlement to relief. *Twombly*, 550 U.S. at 555.

A complaint submitted by a *pro se* plaintiff, "however inartfully ple[d], must be held to less stringent standards than formal pleadings drafted by lawyers . . . ." *Estelle v. Gamble*, 429 U.S. 97, 106 (1976) (quoting *Haines v. Kerner*, 404 U.S. 519, 520-21 (1972) (internal quotation marks omitted)). Because *pro se* plaintiffs "'are often unfamiliar with the formalities of pleading requirements,' courts must 'apply a more flexible standard in determining the sufficiency of a *pro se* [complaint] than they would in reviewing a pleading submitted by counsel.'" *Smith v. U.S. Dep't of Justice*, 218 F. Supp. 2d 357, 361 (W.D.N.Y. 2002) (quoting *Platsky v. Cent. Intelligence*

*Agency*, 953 F.2d 26, 28 (2d Cir. 1991) (alteration in original)). While "[p]*ro se* complaints are held to less stringent standards than those drafted by lawyers, even following *Twombly* and *Iqbal*," dismissal is proper "where a plaintiff has clearly failed to meet minimum pleading requirements." *Thomas v. Westchester Cty.*, No. 12-CV-6718, 2013 WL 3357171, at *2 (S.D.N.Y. July 3, 2013) (internal citations omitted); *see also Chavis v. Chappius*, 618 F.3d 162, 170 (2d Cir. 2010) ("Even in a *pro se* case . . . 'although a court must accept as true all of the allegations contained in a complaint, that tenet is inapplicable to legal conclusions, and threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.'" (quoting *Harris*, 572 F.3d at 72)).

Therefore, while the Court must "draw the most favorable inferences that [a plaintiff's] complaint supports, [it] cannot invent factual allegations that [a plaintiff] has not pled." *Chappius*, 618 F.3d at 170. The Court has also a duty to interpret "the pleadings of a *pro se* plaintiff liberally and interpret them 'to raise the strongest arguments that they suggest.'" *McPherson v. Coombe*, 174 F.3d 276, 280 (2d Cir. 1999) (quoting *Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir. 1994)).

Moreover, when deciding an unopposed motion to dismiss—as is the case here—"the Court is to 'assume the truth of a pleading's factual allegations and test only its legal sufficiency. Thus, although a party is of course to be given a reasonable opportunity to respond to an opponent's motion, the sufficiency of a complaint is a matter of law that the court is capable of determining based on its own reading of the pleading and knowledge of the law.'" *Law v. Corizon Med. Servs.*, No. 13-CV-5286, 2014 WL 2111675, at *3 (S.D.N.Y. May 12, 2014) (quoting *McCall v. Pataki*, 232 F.3d 321, 322-23 (2d Cir. 2000)). Therefore, it is appropriate for the Court to test the legal sufficiency of the Complaint even without the benefit of a brief in opposition to the motion.

## ANALYSIS

I.   First Claim for Relief: FCRA

The FCRA was enacted in "1970 to ensure fair and accurate reporting, promote efficiency in the banking system, and protect consumer privacy." *Safeco Ins. Co. of Am. v. Burr*, 551 U.S. 47, 52 (2007). As part of this objective, "[t]he FCRA places distinct obligations on three types of entities: consumer reporting agencies, users of consumer reports, and furnishers of information to consumer reporting agencies." *Lichtman v. Chase Bank USA, N.A.*, No. 18-CV-10960, 2020 WL 1989486, at *3 (S.D.N.Y. Apr. 27, 2020) (quoting *O'Diah v. New York City*, No. 02-CV-274, 2002 WL 1941179, at *12 (S.D.N.Y. Aug. 21, 2002)). Here, Plaintiff's theory of liability is premised on Defendants' purported status as furnishers of information. (Compl. at 12 (alleging that "Defendant reported derogatory information about Plaintiff to one or more consumer reporting agencies" and "continued to report negative information to . . . credit bureaus . . . .")).

To state a claim against a furnisher under 15 U.S.C. § 1681s-2(b)(1), "a consumer must show that (1) a furnisher received notice of a credit dispute from a [credit reporting agency] (as opposed to from the consumer alone) and (2) the furnisher negligently or willfully failed to conduct a reasonable investigation." *Ngambo v. Chase*, No. 20-CV-2224, 2020 WL 1940553, at *3 (S.D.N.Y. Apr. 22, 2020) (quoting *Jackling v. HSBC Bank USA, N.A.*, No. 15-CV-6148, 2019 WL 162743, at *4 (W.D.N.Y. Jan. 10, 2019) (alterations in original)); *see also Lieberman v. Am. Express Co.*, No. 19-CV-6989, 2020 WL 5517271, at *2 (E.D.N.Y. Sept. 14, 2020). Here, Plaintiff did not allege that she reported any dispute to any credit reporting agency or that Defendants received a dispute notice from such an agency. (*See generally* Compl.). Accordingly, because a

furnishers' liability can be triggered only after receiving notice of a credit dispute *from a credit reporting agency*, this claim for relief is dismissed.[4]

II.   <u>Second Claim for Relief: FDCPA</u>

Plaintiff's second claim for relief asserts a violation of the FDCPA. "The purpose of the FDCPA is to 'eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses.'" *Benzemann v. Citibank N.A.*, 806 F.3d 98, 100 (2d Cir. 2015) (quoting *Kropelnicki v. Siegel*, 290 F.3d 118, 127 (2d Cir. 2002)); *see also* 15 U.S.C. § 1692(e). The FDCPA "only applies to statutorily defined 'debt collectors.'" *Qurashi v. Ocwen Loan Servicing, LLC*, 760 F. App'x 66, 68 (2d Cir. 2019) (quoting 15 U.S.C. § 1692a(6)). "To prevail on a claim under the FDCPA, three requirements must be met: '(1) the plaintiff must be a consumer who allegedly owes the debt or a person who has been the object of efforts to collect a consumer debt, and (2) the defendant collecting the debt is considered a debt collector, and (3) the defendant has engaged in any act or omission in violation of FDCPA requirements.'" *Schwebel v. Resurgent Capital Servs., L.P.*, No. 19-CV-8821, 2020 WL 5663382, at *4 (S.D.N.Y. Sept. 23, 2020) (quoting *Okyere v. Palisades Collection, LLC*, 961 F. Supp. 2d 522, 529 (S.D.N.Y. 2013)). Defendants maintain that this claim for relief must be dismissed because Plaintiff has not pled facts establishing that that they meet the definition of "debt collector" under the FDCPA. (Doc. 12 at 3). The Court agrees.

A "debt collector" is defined in pertinent part under the FDCPA as:

> [A]ny person who uses any instrumentality of interstate commerce
> or the mails in any business the principal purpose of which is the

---

[4] To the extent Plaintiff may have sought to state a claim under 15 U.S.C. § 1681s-2(a), it must be dismissed because that "statute plainly restricts enforcement of that provision to federal and state authorities." *Longman v. Wachovia Bank, N.A.*, 702 F.3d 148, 151 (2d Cir. 2012).

> collection of any debts, or who regularly collects or attempts to
> collect, directly or indirectly, debts owed or due or asserted to be
> *owed or due another*.

15 U.S.C. § 1692a(6) (emphasis added). This definition excludes explicitly "any officer or

employee of a creditor while, in the name of the creditor, collecting debts for such creditor." 15

U.S.C. § 1692a(6)(A). The FCPA defines "creditor," in turn, to mean:

> [A]ny person who offers or extends credit creating a debt or to
> whom a debt is owed, but such term does not include any person to
> the extent that he receives an assignment or transfer of a debt in
> default solely for the purpose of facilitating collection of such debt
> for another.

15 U.S.C. § 1692a(4). Stated simply, a creditor—the entity that made the loan and to whom the

debt is owed—is not a debt collector under the FDCPA. *See Houck v. U.S. Bank, N.A. ex rel.

Citigroup Mortg. Loan Tr. 2007-AR5*, 689 F. App'x 662, 664-65 (2d Cir. 2017) ("Because the

Defendants are 'creditors' seeking to collect debts owed to them, the district court appropriately

concluded that Wells Fargo and U.S. Bank are not 'debt collectors' within the meaning of the

statute. Accordingly, Houck does not have a viable FDCPA claim."); *see also Maguire v. Citicorp

Retail Servs., Inc.*, 147 F.3d 232, 235 (2d Cir. 1998) ("As a general matter, creditors are not subject

to the FDCPA.").

Plaintiff has not pled that either Defendant qualified as a debt collector under the FDCPA.

In fact, she has pled quite the opposite.

With respect to Huntington, Plaintiff pled that she owed a debt to FirstMerit, which, in

turn, "merged and operate[d] as part of" Huntington. (Compl. at 10-11). By merging with

FirstMerit, Huntington replaced FirstMerit as the creditor to whom Plaintiff owed her debt. *See

Johnson-Gellineau v. Steine & Assocs., P.C.*, No. 16-CV-9945, 2019 WL 2647598, at *7-8

(S.D.N.Y. June 27, 2019), *aff'd sub nom. Johnson-Gellineau v. Stiene & Assocs., P.C.*, --- F.

App'x ---, 2020 WL 6735286 (2d Cir. Nov. 17, 2020); *Pascal v. JPMorgan Chase Bank, Nat'l Ass'n*, No. 09-CV-10082, 2013 WL 878588, at *4 (S.D.N.Y. Mar. 11, 2013) (explaining that the mortgage servicer did not qualify as "debt collector" under the FDCPA because "as a result of the merger or acquisition, they 'stand[] in the place of [the original servicing company] as Plaintiffs' loan servicer'" (quoting *Fenello v. Bank of Am., N.A.*, No. 11-CV-4139, 2013 WL 598395, at *6 (N.D.Ga. Feb. 15, 2013) (alterations in original)). Consequently, as Plaintiff pled facts supporting the conclusion that Huntington is a creditor that sought to collect its own debt, she has not pled an FDCPA violation.

Insofar as Bancshares is concerned, as noted *supra*, it appears that it is named in the Complaint only because it is Huntington's corporate parent. (*See* Compl. at 10-14). Assuming *arguendo* that Plaintiff pled facts permitting the plausible inference that Huntington acted as a debt collector under the FDCPA—something she has not done—Bancshares would only be subject to the FDCPA if: "(1) the parent company dominated the 'debt collector subsidiary' to the extent that they constitute a single economic enterprise, (2) the parent company controlled almost all aspects of the subsidiary's debt collection, or (3) the parent company's name is an alias for the subsidiary." *Digiacomo v. Midland Credit Mgmt., Inc.*, No. 16-CV-01875, 2019 WL 2256769, at *2 (E.D.N.Y. Feb. 22, 2019) (citing *Harrison v. NBD Inc.*, 968 F. Supp. 837, 845 (E.D.N.Y. 1997)), *adopted by* 2019 WL 1349483 (E.D.N.Y. Mar. 26, 2019). Plaintiff provides absolutely no facts to support any of these three scenarios. As such, Plaintiff has not pled plausibly that Bancshares would qualify as a debt collector under the FDCPA.

As Plaintiff has not pled facts allowing the plausible inference that either Defendant was acting as a debt collector under the FDCPA, the claim is dismissed.

## CONCLUSION

Based upon the foregoing, Defendants' motion to dismiss is GRANTED. While "[d]istrict courts should frequently provide leave to amend before dismissing a *pro se* complaint . . . leave to amend is not necessary when it would be futile." *Reed v. Friedman Mgt. Corp.*, 541 F. App'x 40, 41 (2d Cir. 2013) (citing *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000)). For all the reasons described herein, the Court dismisses the foregoing claims alleged in Plaintiff's Complaint with prejudice as any amendment would be futile.[5]

The Clerk of the Court is respectfully directed to terminate the motion sequence pending at Doc. 11, mail a copy of this Memorandum Opinion and Order to Plaintiff, and close this case.

**SO ORDERED:**

Dated:   White Plains, New York
           February 19, 2021

_____
PHILIP M. HALPERN
United States District Judge

---

[5] Even if the Court did not dismiss this action on the substantive grounds outlined above, it would dismiss the action with prejudice under Rule 41(b) as a result of Plaintiff's failure to prosecute this action. Indeed, Plaintiff has not filed anything in this action since it was removed to this Court over one year ago. *See Bar-Levy v. Gerow*, No. 18-CV-09454, 2020 WL 7774297 (S.D.N.Y. Dec. 30, 2020); *Chappell v. City of Peekskill*, No. 18-CV-05901, 2020 WL 6947427 (S.D.N.Y. Nov. 25, 2020).